UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
NICHOLAS R. HANLON,

                Plaintiff,

       - against -

ANDREW SAUL,[1]

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-7090 (PKC)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Nicholas R. Hanlon commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Disabled Adult Child ("DAC") Benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 14, 17.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is automatically substituted as Defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is respectfully directed to update the docket accordingly.

## BACKGROUND

**I.     Procedural History**

On March 23, 2015, Plaintiff filed an application for DAC benefits and Supplemental Security Income ("SSI"), alleging that he had been disabled as of February 19, 1997. (Administrative Transcript ("Tr."), Dkt. 12, at 147, 258–74.) His application was denied. (*Id.* at 177–79, 201–03.) After requesting a hearing (*id.* at 213), Plaintiff appeared before Administrative Law Judge ("ALJ") Eric Eklund on September 28, 2017 (*id.* at 74). In a decision dated February 7, 2018, the ALJ determined that as of March 23, 2015, the date of Plaintiff's application, Plaintiff was disabled and entitled to SSI; however, the ALJ determined that Plaintiff was not disabled prior to March 23, 2015, which covers the relevant period for purposes of Plaintiff's DAC benefits claim, *i.e.*, between the alleged onset date, February 19, 1997, and the date Plaintiff turned twenty-two, August 8, 2008 [the "DAC Benefits Period"].[2] (*Id.* at 13−27.) Thereafter, Plaintiff requested review of the ALJ's decision, and the SSA declined that request on October 17, 2018. (*Id.* at 1–5.) Plaintiff timely[3] filed the instant action, challenging the denial of DAC benefits. (*See generally* Complaint, Dkt. 1.)

---

[2] The ALJ referred to February 19, 1997 as the "alleged onset date" and March 23, 2015 as the "established onset date." (*Id.* at 15–16.)

[3] Title 42, United States Code, Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on October 22,

2

## II.     The ALJ Decision[4]

"The Social Security Act provides disability insurance benefits for a disabled adult child . . . if the claimant is 18 years old or older and has a disability that began before the claimant became 22 years old."[5]  *Doerr v. Colvin*, No. 13-CV-429 (JTC), 2014 WL 4057446, at *3 (W.D.N.Y. Aug. 14, 2014) (internal quotation marks and brackets omitted) (quoting 20 C.F.R. § 404.350(a)(5)).  The eligibility determination with respect to DAC benefits focuses on the period between the alleged onset date and the claimant's twenty-second birthday.  "In the context of determining eligibility for disabled adult child's benefits, the term 'disability' has substantially the same definition as it does in traditional, adult disability cases."  *Id.*; *see also Priel v. Astrue*, 453 F. App'x 84, 86 (2d Cir. 2011) (summary order) (applying the definition of disability for adults and a five-step inquiry set out *infra* to the analysis of DAC benefits).

In evaluating disability claims, the ALJ must adhere to a five-step inquiry.  20 C.F.R. § 404.1520(a)(2).  The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the answer is yes, the claimant is not disabled.  If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment."  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is severe when it

---

2018. Plaintiff filed the instant action on December 13, 2018—52 days later—making this action timely. (*See generally* Complaint, Dkt. 1.)

[4] Plaintiff was granted SSI and does not challenge that portion of the ALJ's decision. Therefore, the Court only discusses the portion of the decision relevant to Plaintiff's DAC benefits.

[5] Plaintiff was born on August 8, 1986 (Tr. at 147) and turned twenty-two on August 8, 2008.

3

"significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 19, 1997, when Plaintiff was ten years old, and that Plaintiff suffered from the following severe impairments: "depressive disorder; anxiety disorders; obsessive-compulsive disorder; attention deficit hyperactivity disorder (ADHD); cervical and lumbar degenerative disc disease with cervical radiculopathy and shallow disc bulges at L5-S1; bilateral sensory neuropathy in the upper and lower extremities; Ehler's Danoff [sic] syndrome[6]; and history of seizures." (Tr. at 16.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal the severity of one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 CFR § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Here, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr. at 16.) Moving on to the fourth step, the ALJ found that prior to March 23, 2015, which covers the DAC Benefits Period, Plaintiff had the residual

---

[6] "Ehlers-Danlos syndrome is a group of disorders that affect connective tissues supporting the skin, bones, blood vessels, and many other organs and tissues. Defects in connective tissues cause the signs and symptoms of these conditions, which range from mildly loose joints to life-threatening complications." *Cassandra K. v. Comm'r of Soc. Sec.*, No. 18-CV-86 (ATB), 2019 WL 1115673, at *3 n.2 (N.D.N.Y. Mar. 11, 2019).

functional capacity ("RFC")[7] to perform "light work" as defined in 20 C.F.R. § 404.1567(b).[8] (*Id.* at 18.) Qualifying his RFC determination, the ALJ noted that Plaintiff

> could have never crawled or climbed ladders, ropes, or scaffolds. In addition, he could have performed extending, rotating, and flexing of his neck frequently. He could perform foot control operations frequently. The claimant could have performed frequent fingering. However, he could have tolerated no exposure to unprotected heights, moving machinery, or driving as part of his work duties. Furthermore, he was limited to performing no more than simple, unskilled work with no interaction with the public as part of his work duties. Additionally, he could have interacted with co-workers and supervisors no more than occasionally.

(*Id.*)

The ALJ then determined that Plaintiff had no past relevant work. (*Id.* at 24.) The ALJ proceeded to step five. At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing prior to March 23, 2015, namely: (1) cleaner, which has an availability of

---

[7] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[8] According to the applicable regulations,

[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

5

190,000 jobs; (2) bench assembler, which has an availability of 140,000 jobs; and (3) marker,[9] which has an availability of 165,000 jobs. (Tr. at 25.) As such, the ALJ found that prior to March 23, 2015 and, in effect, during the DAC Benefits Period, Plaintiff was not disabled under the Act. (*Id.* at 26.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks, citation, and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

---

[9] A "marker" is defined under the applicable regulations as someone who "[m]arks and attaches price tickets to articles of merchandise to record price and identifying information . . . ." *Dictionary of Occupational Titles* 209.587-034, 1991 WL 671802.

# DISCUSSION[10]

## I. Listing Determination

Plaintiff contends that the ALJ erred at the third step by determining that Plaintiff's mental impairments did not meet or equal the severity of Listing 12.04. (Pl.'s Br., Dkt. 14-2, at 14–17.) The ALJ found that Plaintiff did not demonstrate a marked limitation[11] in at least two areas of mental functioning listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B). (Tr. at 18.) The Court finds that the ALJ's determination was not supported by substantial evidence.

"[A] court has the power to uphold an ALJ's conclusion at step three of the analysis in the absence of an express rationale where portions of the ALJs decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 482 (S.D.N.Y. 2018) (quoting *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)) (internal quotation marks and alterations omitted). However, "where credibility determinations

---

[10] Because the Court finds sufficient grounds for remand as addressed *infra*, the Court does not rule on Plaintiff's argument that the ALJ failed to determine an onset date for his current (*i.e.*, post-March 23, 2015) disability in accordance with SSR 83-20, 1983 WL 31249 (1983). (Plaintiff's Memorandum of Law ("Pl.'s Br."), Dkt. 14-2, at 20–21.) Plaintiff turned twenty-two in 2008 (Tr. at 147) and began mental health treatment in 2014 (*id.* at 609–11). Despite determining that for his current disability, Plaintiff was disabled on the date of application, March 23, 2015, the ALJ did not specifically determine the onset date for the purpose of his SSI benefits. (*Id.* at 21–24.) While perhaps technically improper, the ALJ's failure to do so is irrelevant to Plaintiff's DAC benefits claim, because had the ALJ determined the onset date of Plaintiff's *current* disability, he would have found an onset date after the DAC Benefits Period. Therefore, even if the Court were to address this argument, it likely would not find reversible error with respect to this matter. *See Plumley v. Astrue*, No. 09-CV-42 (JMC), 2010 WL 520271, at *6 (D. Vt. Feb. 9, 2010) ("[A]n ALJ's failure to follow SSR 83-20's requirement to determine an onset date is harmless error, where the ALJ finds that the onset date post-dated the date last insured; substantial evidence supports that finding; and the decision generally comports with the analysis set forth in SSR 83-20." (citation omitted)).

[11] A marked limitation means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d).

7

and inference drawing [are] required of the ALJ to form his conclusion at step three, then remand for the ALJ to explain his reasoning is required." *Id.* at 483 (internal quotation marks and citations omitted).

The ALJ determined specifically that "[b]efore [March 23, 2015,] the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04." (Tr. at 15, 17.) Yet, the ALJ mostly relied on Plaintiff's activities after March 23, 2015 in making this determination. For instance, when analyzing the function of concentrating, persisting, or maintaining pace, the ALJ relied on Plaintiff's testimony that the last book he read was The Art of War "in the last year or two" (*id.* at 94–95) and extrapolated that Plaintiff enjoyed reading, "which [was] supportive of less than marked limitations . . . ." (*Id.* at 17.) However, whether Plaintiff enjoys reading now does not bear on the question of whether Plaintiff had marked limitations in his ability to concentrate prior to the age of twenty-two. The ALJ also relied on an April 27, 2015 consultative examination that found Plaintiff's concentration intact (*id.* at 427) and that Plaintiff was able to drive at that time (*id.* at 18). These results similarly do not support a finding that Plaintiff was able to concentrate before March 23, 2015 and, more specifically, during the DAC Benefits Period.

Similarly, the ALJ concluded that Plaintiff had only a moderate limitation in adapting or managing oneself "before [March 23, 2015]." (*Id.* at 15, 18). The ALJ relied on Plaintiff's appearance and grooming during his field office interview on March 23, 2015 (*id.* at 293–94) and Plaintiff's April 3, 2015 report that he cooks sometimes and lives alone (*id.* at 313–15, 323)— again, information that postdates the DAC Benefits Period.

The ALJ's conclusion that Plaintiff's severe impairments prior to March 23, 2015 did not meet or equal the Listings, therefore, was not based on relevant evidence. Remand is warranted

8

when the ALJ's analysis misconstrues the record and is not supported by substantial evidence. *See Fruhling v. Colvin*, No. 15-CV-4417 (BMC), 2016 WL 4097085, at *1–2 (E.D.N.Y. July 30, 2016) (finding the ALJ's decision on DAC benefits was not supported by substantial evidence, where the ALJ mainly relied on plaintiff's current characteristics in determining childhood disability); *Stover v. Comm'r of Soc. Sec.*, No. 04-CV-1467 (NAM) (GHL), 2008 WL 4283421, at *9 (N.D.N.Y. Sept. 16, 2008) (finding the ALJ's conclusion at step three was not based on substantial evidence where the ALJ misstated the record). Therefore, the Court finds that remand is necessary for the ALJ to properly analyze whether Plaintiff's pre-March 23, 2015 impairments met or equaled the severity of Listing 12.04.

## II. Treating Physician Rule

Plaintiff contends that the ALJ failed to accord proper weight to his treating physician's opinion regarding Plaintiff's mental impairments prior to his twenty-second birthday and failed to re-contact the treating physician regarding deficiencies or inconsistencies in the opinion perceived by the ALJ.[12] (Pl.'s Br., Dkt. 14-2, at 17–20, 21–23.)

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks, brackets, and citations omitted).[13] As the Second Circuit has explained:

---

[12] Plaintiff also argues that the ALJ substituted his own judgment for medical opinion. (Pl.'s Br., Dkt. 14-2, at 21–23.) However, Plaintiff's argument centers around the ALJ's reliance on the medical consultants' opinions and the ALJ's failure to re-contact his treating physician, both of which are addressed *infra*.

[13] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed on March 23, 2015, as the current regulations only "apply to cases filed on or after March 27,

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives [the] claimant's treating source's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks, brackets, and citations omitted).

"Before the ALJ can disregard a treating physician's medical opinion, the ALJ must first ask the treating physician to clarify the deficiencies the ALJ perceives in that opinion." *Austin v. Comm'r of Soc. Sec.*, No. 18-CV-331 (PKC), 2019 WL 4751808, at *6 (E.D.N.Y. Sept. 30, 2019) (citation omitted). "[T]he ALJ must seek additional evidence or clarification when the report from [the] claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (internal quotation marks and brackets omitted); *see also Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) ("Legal errors regarding the duty to develop the record warrant remand." (collecting cases)).

Furthermore, while an ALJ is entitled to disregard the opinion of a claimant's treating physician after giving the physician the opportunity to correct the deficiencies in her medical reports, the ALJ must make clear that this decision is based on conclusions made by other medical professionals. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted

---

2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c).

10

to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."); *Hillsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

The ALJ recognized Dr. Shafiq Khokhar, a neuro-psychiatrist, as Plaintiff's current treating physician since 2014. (Tr. at 23, 607.) However, the ALJ disregarded Dr. Khokhar's opinion that Plaintiff's "impairments [had] limited [Plaintiff] since the age of 10," finding this opinion inconsistent with the fact that Plaintiff had only commenced mental health treatment in 2014. (*Id.* at 23.) The ALJ further argued that there were no records that supported Plaintiff's mental health deficits in his adolescent years, other than the one hospitalization around the time of the alleged onset date. (*Id.*) This was error.

First, a treating physician's retrospective opinion should not be discounted merely because the physician did not treat Plaintiff during the DAC Benefits Period. "The retrospective opinion of a doctor who is currently treating a claimant is entitled to significant weight even though the doctor did not treat the claimant during the relevant period." *Martinez v. Massanari*, 242 F. Supp. 2d 372, 377 (S.D.N.Y. 2003) (internal quotation marks and citation omitted); *see Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) ("While [the current treating physician] did not treat the appellant during the relevant period before [the date last insured], his opinion is still entitled to significant weight."); *McAllister v. Colvin*, 205 F. Supp. 3d 314, 332 (E.D.N.Y. 2016) ("[E]ven if [the treating physician] did not treat plaintiff during the period prior to plaintiff's date last insured, that fact alone does not show that [the treating physician's] opinion warrants no consideration or weight."). In fact, "[p]sychiatric illnesses . . . tend not to strike like lightning, they are progressive,

11

and for that reason are often particularly well-suited to retrospective diagnosis, especially where a psychiatric record has been maintained." *Adorno v. Halter*, No. 99-CV-2758 (HB), 2002 WL 59422, at *3 (S.D.N.Y. Jan. 16, 2002) (citation omitted).

Having treated Plaintiff for three years, Dr. Khokhar had substantial knowledge about Plaintiff's mental health history. (Tr. at 23.) "It is axiomatic that a treating psychiatrist must consider a patient's subjective complaints in order to diagnose a mental disorder. . . . [C]onsideration of a patient's report of complaints, or history, as an essential diagnostic tool, is a medically acceptable clinical and laboratory diagnostic technique." *Santana v. Astrue*, No. 12-CV-815 (BMC), 2013 WL 1232461, at *14 (E.D.N.Y. Mar. 26, 2013) (internal quotation marks, citation, and alterations omitted); *see also id.* at *13 ("[T]here is nothing improper about the diagnostic method of using the patient's subjective opinion of her depression in order to identify the onset of the plaintiff's mental disability." (citations omitted)). Therefore, the ALJ should not have disregarded Dr. Khokhar's opinion about Plaintiff's pre-2014 mental impairments, without "contradictory medical evidence or overwhelmingly compelling non-medical evidence." *Butler v. Colvin*, No. 13-CV-352 (DRH), 2014 WL 6909529, at *14 (E.D.N.Y. Dec. 4, 2014) ("Although [the treating physician] began treating Plaintiff after the date last insured, his retrospective opinion should nevertheless have been afforded significant weight by the ALJ in the absence of contradictory medical evidence or overwhelmingly compelling non-medical evidence.").

Second, failure to seek treatment does not constitute substantive evidence to discount the treating physician's opinion. "[Delay in treatment] is not so remarkable when dealing with mental illnesses such as PTSD and adjustment disorder, which often go untreated for long periods of time." *Plumley*, 2010 WL 520271, at *10; *see also Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000) ("Just because plaintiff's disability went untreated does not mean he was not disabled.");

*Cataneo v. Astrue*, No. 11-CV-2671 (KAM), 2013 WL 1122626, at *20 (E.D.N.Y. Mar. 17, 2013) ("The inference [that a claimant's failure to seek treatment undermines his disability claim] is less plausible for an individual with a mental impairment with symptoms that include social anxiety and isolation."). It is obvious that persons suffering from mental illness frequently do not seek treatment because of the effects of the disease itself, which make them unaware of their disease or resistant to treatment. Any inference drawn from the delay in treatment, therefore, does not constitute substantial evidence for the conclusion that Plaintiff was not disabled. *Id.* at *19.

"[T]he Second Circuit has attributed significant probative value to retrospective opinions from treating physicians that are not otherwise undermined by conflicting medical or circumstantial evidence." *Id.* at *21 (citations omitted). When "[t]here is no objective medical evidence that contradicts [the treating physician's] opinion, and the weight of the contrary circumstantial evidence cited by [the ALJ] is questionable," the treating physician's retrospective opinion should be accorded significant weight. *Id.* The ALJ does not provide any other reason for discounting the treating physician's opinion, aside from the retrospective nature and Plaintiff's delay in seeking treatment. While there is no contemporaneous medical evidence that *affirms* the existence of mental disability other than the 1997 hospitalization (Tr. at 23), there is also no contemporaneous medical evidence during the DAC Benefits Period that *contradicts* a finding of mental disability. Under such circumstances, the treating physician's retrospective opinion should be accorded significant weight. *Cataneo*, 2013 WL 1122626, at *19–21 (finding that the treating physician's retrospective opinion should be accorded significant weight when "there is no affirmative evidence of either disability or non-disability from the [r]elevant [p]eriod" and noting that the ALJ should not have inferred from the delay in treatment that Plaintiff was not disabled during the relevant period).

To the extent that the ALJ relied on any inconsistencies the ALJ perceived between Dr. Khokhar's opinion and the record,[14] the ALJ should have sought clarification from Dr. Khokhar about the inconsistencies. *See Austin*, 2019 WL 4751808, at *6; *Caplan v. Astrue*, No. 05-CV-3695 (DLI) (JMA), 2009 WL 691922, at *7 (E.D.N.Y. Mar. 15, 2009) ("Thus, to the extent the ALJ intended to discredit [the treating physician's] conclusions based on the sufficiency of the evidence, the ALJ had a duty to pursue whether [the treating physician], indeed, had sufficient evidence to support her conclusions.").

Therefore, the Court finds that remand is warranted to enable the ALJ to accord Dr. Khokhar's opinion proper weight, or at the very least, seek clarification from Dr. Khokhar regarding any deficiencies the ALJ perceives in his opinion.

---

[14] Although the ALJ did not explicitly rely on the agency consultants' opinions in disregarding Dr. Khokhar's opinion, the ALJ accorded "great weight" to their opinions that "there was insufficient evidence to evaluate the child disability claim." (Tr. at 20.) However, Dr. Aroon Suansilppongse, a psychiatric consultant (*id.* at 485–99), and Dr. R. Cohen, a neurologist (*id.* at 521–30), merely reviewed the record and did not examine Plaintiff. A non-examining medical expert's "opinion cannot constitute substantial evidence and normally may not override a treating source's opinion unless it is supported by sufficient medical evidence in the record." *Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *19 (E.D.N.Y. Sept. 28, 2017) (citation omitted); *accord Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012) ("The medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight."). That principle is particularly relevant here, where the opinion is necessarily retrospective and requires the medical expert to interact with the claimant and inquire, in depth, about his mental health history. "[A]n ALJ is not permitted to credit the consultative opinion without 'comprehensively set[ting] forth' 'good reasons.'" *Anderson v. Colvin*, No. 15-CV-6720 (PKC), 2017 WL 1166350, at *10 (E.D.N.Y. Apr. 3, 2017) (quoting *Halloran*, 362 F.3d at 33). The ALJ merely found that the non-examining consultants' conclusions were "consistent with the lack of documented ongoing treatment in the record." (Tr. at 20.) Such an explanation is insufficient to justify giving great weight to the opinions, or crediting them over that of Plaintiff's treating physicians. *See Anderson*, 2017 WL 1166350, at *10 (finding insufficient the ALJ's conclusion that the non-examining physician's opinion was consistent with the record).

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration and new findings consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 2, 2020
　　　 Brooklyn, New York